IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KAYLEE CIFUENTES, AMBER CARL,**
**CHRISTIE FREEMAN, KARYN YATES,**
**LAURA COLLINS, ELIZABETH CLINE,**
**KENNETH HANNAH, MICHELLE HUMPHREY,**
**LACANREAL ROBERSON, and DAVID LACY,**
**individually and on behalf of all others**
**similarly situated**                                              **PLAINTIFFS**

**V.**                             **CASE NO. 5:23-CV-5197**

**OUTCOMES, INC. and TONY POSEY**                         **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are the parties' cross-Motions for Summary Judgment (Docs. 44, 48, 67), and their briefs, responses, replies, and statements of facts in support of or opposition to those motions (Docs. 46–47, 49–54, 64–66, 68–69, 72–75). For the reasons given below, Defendants' Motion for Partial Summary Judgment and Dismissal of Kaylee Cifuentes' Claims (Doc. 44) is **DENIED**; Defendants' Motion for Summary Judgment pursuant to 29 U.S.C. § 259, or Alternatively Partial Summary Judgment Pursuant to 29 U.S.C. § 255; Ark. Code Ann. § 11-4-218(g), 28 U.S.C. § 260 and Ark. Code Ann. § 11-4-218(a)(2) (Doc. 48) is **DENIED**; and Plaintiffs' Motion for Partial Summary Judgment (Doc. 67) is **GRANTED IN PART AND DENIED IN PART**. All claims and defenses remain for trial.

**I.    BACKGROUND**

Defendant Outcomes, Inc. ("Outcomes") is an Arkansas nonprofit corporation that provides a variety of services to assist individuals with disabilities, ranging from minimal

1

assistance to full-time support. Defendant Tony Posey is the founder and Executive Director of Outcomes. The plaintiffs in this case are all current or former employees of Outcomes who worked overnight shifts in the homes of clients, during which they spent some of their time sleeping on-site. They have brought this class and collective-action lawsuit under the federal Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"), claiming that they were improperly denied compensation for the time they spent sleeping on-site.

## II.    LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When no material facts are in dispute, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway*

*Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.    DISCUSSION

Most of the critical issues in these motions turn on disputes that are purely legal in nature, rather than factual.  The Court will begin its analysis with those issues.  Then it will separately address each pending motion.

### A.  Rulings Generally Applicable to All Pending Motions

First, and most fundamentally, Outcomes contends it is not subject to the requirements of the FLSA because it is a nonprofit corporation.  This is incorrect.  "The statute contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations, and the agency charged with its enforcement has consistently interpreted the statute to reach such businesses."  *Tony and Susan Alamo Foundation v. Sec. of Labor*, 471 U.S. 290, 296–97 (1985).  The FLSA explicitly states that "the employment of persons in domestic service in households" is a commercial activity that is subject to its requirements, *see* 29 U.S.C. § 202(a), and the performance of tasks like "cooking, light housekeeping, . . . ensuring timely provision of ordered treatments and medications[,] . . . dressing, grooming, feeding, bathing, toileting, and transfer to and from bed," in the nature of "caretakers and home health aides," is labor that obviously qualifies as such "domestic service in households," *see Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 698–99 (N.D. Tex. 2018).

Second, as both sides concede, "[t]he FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should

be interpreted in the same manner." *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985–86 (W.D. Ark. 2016). Accordingly, this Court's analysis will focus primarily on the FLSA but should be understood to apply to Plaintiffs' claims under both the FLSA and the AMWA except where the AMWA is specifically referenced herein as differing in some way from the FLSA.

Third, the Court will address the topic of "sleep time" under the FLSA generally. "Under certain conditions an employee is considered to be working even though some of his time is spent sleeping . . . ." 29 C.F.R. § 785.20. The general rule is that "[a]n employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." *Id.* at § 785.21. "It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime." *Id.* The governing regulations on this topic allow only two exceptions to this rule. One is that "[w]here an employee is required to be on duty *for 24 hours or more*, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." *Id.* at § 785.22(a) (emphasis added). The other exception is for "[a]n employee who *resides* on his employer's premises on a permanent basis or for extended periods of time." *Id.* at § 785.23 (emphasis added). Since an employee who resides on his employer's premises "is not considered as working all the time he is on the premises," he and the employer may come to "any reasonable agreement" that excludes his "normal private pursuits" such as "eating, sleeping, entertaining, and other periods of

complete freedom from all duties" from compensation, so long as that agreement "takes into consideration all of the pertinent facts."  *See id.*

The parties' dispute in the instant case largely turns on whether Plaintiffs come within this second exception for employees who reside on their employer's premises. There is no dispute that Outcomes and Plaintiffs had a written "Scheduled Sleep Time Agreement" (hereinafter "the Sleep Agreement") under which employees working overnight for shifts of 12 hours or longer would have 8 hours of regularly scheduled uncompensated sleep time, with exceptions requiring compensation for documented interruptions in sleep time.  *See, e.g.*, Doc. 18-2.  If the nature of the documented interruptions were such that the employee received less than five hours of uninterrupted sleep during the scheduled sleeping period, then under the Sleep Agreement she would be compensated for the full eight hours of her scheduled sleep time. *See id.*  The question here, then, is whether the Sleep Agreement complies with the requirements of the FLSA because, critically, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies that it was designed to effectuate."  *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740 (1981).

The Court finds that to the extent the Sleep Agreement applies to shifts of less than 24 hours, it does *not* comply with the FLSA.  The only argument to the contrary that Outcomes offers is that 29 C.F.R. § 785.23 allows an employer and employee to agree to uncompensated sleep time of up to 8 hours per shift when the employer works shifts of five consecutive nights.  But in fact § 785.23 says nothing of the sort.  It allows an exception for employees who reside on their employers' premises "for extended periods

of time," but it does not attempt to define what qualifies as an extended period of time. Outcomes' argument about five consecutive night shifts is based entirely on an April 25, 2016 Memorandum ("the 2016 Memo") from the U.S. Department of Labor's ("DOL") Wage and Hour Administrator entitled "Exclusion of Sleep Time from Hours Worked by Domestic Service Employees," *see* Doc. 30-4, and on the 1991 Eighth Circuit case of *Bouchard v. Regional Governing Board of Region v. Mental Retardation Services*, 939 F.2d 1323.

The facts of *Bouchard* are materially different from those in the instant lawsuit. Importantly, the employees in that case "resided at the Region V group homes for *consecutive five day and four night periods*." 939 F.2d at 1329 (emphasis added). In other words, they "remained at [the employer's] premises *from Monday afternoon until Friday*." *Id.* at 1328 (emphasis added). The Eighth Circuit observed that the DOL had previously "issued letter rulings that houseparents who work five day-four night schedules comparable to those of [the plaintiffs in *Bouchard*] do reside on the employer's premises for extended periods of time within the meaning of § 785.23 and therefore may be afforded, pursuant to a written employment agreement, up to eight hours of unpaid sleep time per day in private quarters on the employer's premises." *Id.* at 1330. It further observed that the DOL's "interpretation of its own regulation is reasonable on its face and is entitled to deference by the courts and contracting parties." *Id.* However, the Sleep Agreement in the instant lawsuit does not contain terms limiting its application to periods in which the employee remains at the client's home for consecutive days and nights of any length at all; instead, it applies, by its terms, "to any 12 – 24 hour or longer work shift." *See* Doc. 18-2. And the record does not contain any evidence that any Plaintiff was ever

required to stay at a client's house for a period of five consecutive days and four consecutive nights (or *vice versa*).

As for the 2016 Memo, a couple of important points should be made.  First, and most importantly, it is not a regulation, statute, or judicial opinion having any binding force of law on employers or employees.  Rather it was simply a "field assistance bulletin" issued to by the DOL to its regional administrators and district directors in order to "provide[] guidance to Wage and Hour Division (WHD) field staff regarding the exclusion of sleep time from the hours worked of domestic service employees."  *See* Doc. 30-4, p. 1.  But second, this Court does not believe the 2016 Memo takes the position advocated by Outcomes, though the 2016 Memo's language admittedly contains some ambiguity.

The 2016 Memo states, in relevant part, that:

> An employee is deemed to reside at her worksite if she lives there on a "permanent basis," *i.e.*, stays there seven nights a week and has no other home, or for "extended periods of time," *i.e.*, works and sleeps there for five days a week (120 hours of more) or five consecutive days or nights (regardless of the total number of hours).

*Id*.  This has been the DOL's policy for a long time now.  Indeed, *Bouchard* quotes a letter ruling of the Deputy Administrator dated February 3, 1981, containing substantively identical language: "[W]here employees are on duty for less than 120 hours in a week, they can be considered as residing on the employer's premises, provided that they spend five consecutive days or five consecutive nights on the premises."  939 F.2d at 1329.

Both of these sources contain similar ambiguous language: "five consecutive days or nights" and "five consecutive days or five consecutive nights."  The ambiguity here is: does this language refer to all employees who simply work shifts of any length which happen to fall on five consecutive calendar days; or does this language refer only to

employees who continuously remain on workplace premises for a period of five consecutive calendar days (so either a period of five consecutive days with four nights in between or a period of four consecutive nights with four days in between)? This Court believes the latter scenario is the intended meaning, and notes again that the latter scenario was precisely the factual situation in *Bouchard*.

There are two reasons why the Court has arrived at this conclusion: one is a common-sense reason, while the other is based on the context provided by the language surrounding the ambiguity. First, as a matter of common-sense, it would be absurd to propose that, for example, an employee "resides" for an "extended period of time" at a client's home when he is hired to work mere two-hour shifts there on five consecutive nights, but is permitted to sleep during those shifts unless the client wakes him with some need. And yet, that is an implication of Outcomes' preferred interpretation.

But second, the Court believes significant context is provided by the 2016 Memo's (and the 1981 letter ruling's) description of the alternative method of residing at the workplace for an extended period of time: "work[ing] and sleep[ing] there for five days a week (120 hours or more)." *See* Doc. 30-4, p. 1. Here, the unavoidable implication is that these are five 24-hour days, because 120 divided by 5 is 24. This is arithmetically obvious even though the Memo says "five days a week" rather than "five days and nights a week." Similarly, it is notable that the Memo deems someone a permanent resident of their workplace if she "stays there seven nights a week and has no other home"—again, note that the language here says "seven nights a week" rather than "seven days and nights a week." Given this linguistic context, the Court believes it far more likely than not that the 2016 Memo's reference to "five consecutive days or nights" likewise refers to

employees who remain on the workplace premises for a continuous period of five consecutive calendar days. The accompanying proviso of "(regardless of the total number of hours)" would be perfectly reasonable under this interpretation because an employee who, for example, was expected to arrive at the client's home at 5:00 p.m. on Monday and depart at 8:00 a.m. on Friday would have been on the premises for "only" 111 hours during that period (which, of course, is less than 120 hours), but nevertheless would have remained there for five consecutive calendar days or nights. Meanwhile, this interpretation avoids the absurd outcome of allowing the "(regardless of the total number of hours)" to sweep in the aforementioned hypothetical employee who "resides" at his client's home for a grand total of 10 hours per week.

So, to summarize and repeat its ruling: the Court finds that the Sleep Agreement does not comply with the requirements of the FLSA and its implementing regulations that sleep hours may not be excluded from pay, *see* 29 C.F.R. § 785.21, unless the employee works shifts of at least 24 hours, *see id.* at § 785.22, or "resides on his employer's premises on a permanent basis or for extended periods of time," *see id.* at § 785.23. With these preliminary rulings out of the way, the Court can now rule on the three pending cross-motions for summary judgment with great ease.

### B. Defendants' Motion for Partial Summary Judgment and Dismissal of Kaylee Cifuentes' Claims (Doc. 44)

First, Defendants' Motion for Partial Summary Judgment and Dismissal of Kaylee Cifuentes' Claims (Doc. 44) must be denied in its entirety. The relief requested therein is premised entirely on the proposition that Ms. Cifuentes was properly characterized as residing at her workplace for an extended period of time simply because her regularly scheduled shift was on five consecutive nights per week. But Outcomes has not provided

9

any evidence that she was required to remain continuously at her workplace for five consecutive calendar days in the manner described above and as, for example, the plaintiffs in *Bouchard* were required to do. Therefore, dismissal of Ms. Cifuentes' claims is inappropriate on summary judgment because a material dispute of fact remains as to whether she remained at her client's home during the days between her consecutive nights on duty. *Cf. Blanco v. Samuel*, 91 F.4th 1061, 1078 (11th Cir. 2024) ("Here, Blanco did not remain at the Parents' house during the days between her consecutive nights on duty. So . . . Blanco does not qualify as having spent 'an extended period of time' at the Parents' house. And as a result, she did not 'reside' there.").

### C. Defendants' Motion for Summary Judgment pursuant to 29 U.S.C. § 259, or Alternatively Partial Summary Judgment Pursuant to 29 U.S.C. § 255; Ark. Code Ann. § 11-4-218(g), 28 U.S.C. § 260 and Ark. Code Ann. § 11-4-218(a)(2) (Doc. 48)

Next, Defendants' Motion for Summary Judgment pursuant to 29 U.S.C. § 259, or Alternatively Partial Summary Judgment Pursuant to 29 U.S.C. § 255; Ark. Code Ann. § 11-4-218(g), 28 U.S.C. § 260 and Ark. Code Ann. § 11-4-218(a)(2) (Doc. 48) must also be denied. In this Motion, Outcomes asserts three separate defenses and argues that they limit or entirely excuse it from liability for the alleged FLSA and AMWA violations in this case. The Court will permit Outcomes to argue these defenses at trial, but finds that they are not appropriate grounds for summary judgment here.

The first such defense is grounded in 29 U.S.C. § 259, which states:

[N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA], if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [DOL], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

Outcomes argues this defense entitles it to dismissal of all claims in this case. That would clearly be inconsistent with this Court's ruling above regarding what qualifies as residing at the workplace for an extended period of time. On this point, it is worth noting that the DOL's long-standing interpretation of its own regulations in this regard accords with the Court's own in this Opinion and Order. *See* Doc. 51-4, pp. 21–24 (internally numbered as pp. 13–16) (DOL *amicus* brief in *Blanco* discussing DOL's history of providing guidance for determining whether an employee resides at her workplace for an extended period of time, and noting that "[t]his examination does not turn simply on whether the employee works five consecutive shifts, during which shifts she may sleep"). However, since the record currently before the Court is quite underdeveloped on the factual question of whether or to what extent any Plaintiffs were required to remain at their clients' homes on consecutive days and nights, the Court will permit Outcomes to present evidence on this matter at trial; and Outcomes may argue its § 259 defense then, to whatever extent such evidence supports it.

The second defense asserted in Outcomes' Motion is that Outcomes is entitled to a two-year statute of limitations on Plaintiffs' FLSA claims because there is no evidence that any of its alleged violations were "willful." This is based on 29 U.S.C. § 255, which provides a general two-year statute of limitations for FLSA violations but extends the limitations period to three years for "a cause of action arising out of a willful violation." *See id.* at § 255(a). In support of this argument, Outcomes points to evidence that, among other things, Mr. Posey attended industry conferences on FLSA requirements for employers and discussed Outcomes' policies and practices with an Arkansas Wage and Hour investigator. *See generally* Doc. 48-1. However, Plaintiffs counter that Mr. Posey's

11

testimony indicates that the only person he ever consulted about the Sleep Agreement before adopting it was his administrative assistant, and that he never consulted any attorneys about it.  *See* Doc. 66-1, pp. 21–23.  The United States Supreme Court has explained that a finding of willfulness can be based on evidence showing reckless disregard for whether an employer's conduct was prohibited by the FLSA.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  And FLSA regulations define "reckless disregard" as "failing to make adequate inquiry into whether conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  Given the inherently fact-intensive and nuanced nature of this inquiry, the Court does not believe the record before it permits a finding as a matter of law that Outcomes' alleged violations were not willful.  But here too, Outcomes may argue this defense at trial.

The third defense raised in Outcomes' Motion is that it is entitled to a finding as a matter of law that no liquidated damages may be imposed in this matter because it acted in good faith and reasonable belief that its acts or omissions were not violations of the FLSA or AMWA.[1]  This defense is inappropriate for resolution on summary judgment for the same reason as that regarding willfulness: a fact-finder could reasonably make conflicting inferences about what Mr. Posey's research and inquiries about his obligations under the FLSA or AMWA say about the level of care or concern he possessed for those

---

[1] The FLSA gives a court discretion to "award no liquidated damages" if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  By contrast, the AMWA permits an award of liquidated damages if the *employee* proves the violation was *willful*.  *See* Ark. Code Ann. § 11-4-218(a)(2).

obligations.  As with the other defenses, Outcomes may argue and present evidence in support of this defense at trial.

### D.  Plaintiffs' Motion for Partial Summary Judgment (Doc. 68)

The Court turns finally to Plaintiffs' Motion for Partial Summary Judgment (Doc. 68).  This motion will be granted in part and denied in part.  Plaintiffs argue that they are entitled to a ruling as a matter of law that Outcomes cannot deduct any sleep time from *per diem* shifts of less than 24 hours.  That is too broad a proposition.  As discussed extensively above, Outcomes can potentially deduct some sleep time from shifts of less than 24 hours if those shifts come within a period of five consecutive days or nights when the employee in question was required to stay continuously at the client's home.  And as already noted, the evidentiary record presently before the Court is underdeveloped on the extent, if any, to which that was the case for these Plaintiffs.  Therefore, this matter is not appropriate for resolution on summary judgment.

However, Plaintiffs are entitled to partial summary judgment on the other issue raised in their Motion: whether Mr. Posey may be individually liable for unpaid wages.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Solis v. Hill County Farms, Inc.*, 808 F. Supp. 2d 1105, 1115 (S.D. Iowa 2011).  This is consistent with the FLSA's definition of "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 23(d).  As already mentioned above, there is no dispute that Mr. Posey is Outcomes' founder and Executive Director.  There also is no dispute that Mr. Posey is the person who had ultimate authority for hiring and firing

employees and for adopting Outcomes' practices concerning the Sleep Agreement. *See* Doc. 22, pp. 3–4, 6 (responses to Interrogatories 6–7 and 11). The only argument Mr. Posey offers against the proposition that he is also Plaintiffs' "employer" under the FLSA is the aforementioned argument that the Outcomes' nonprofit status exempts it from the FLSA's requirements—an argument which this Court has already rejected, above. Therefore, the Court finds as a matter of law that Mr. Posey is, along with Outcomes, Plaintiffs' "employer" for purposes of the FLSA claims in this action.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment and Dismissal of Kaylee Cifuentes' Claims (Doc. 44) is **DENIED**; Defendants' Motion for Summary Judgment pursuant to 29 U.S.C. § 259, or Alternatively Partial Summary Judgment Pursuant to 29 U.S.C. § 255; Ark. Code Ann. § 11-4-218(g), 28 U.S.C. § 260 and Ark. Code Ann. § 11-4-218(a)(2) (Doc. 48) is **DENIED**; and Plaintiffs' Motion for Partial Summary Judgment (Doc. 67) is **GRANTED IN PART AND DENIED IN PART**. All claims and defenses remain for trial.

**IT IS SO ORDERED** on this 31st day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE