**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**


**KAYLEE CIFUENTES, AMBER CARL,
CHRISTIE FREEMAN, KARYN YATES,
LAURA COLLINS, ELIZABETH CLINE,
KENNETH HANNAH, MICHELLE HUMPHREY,
LACANREAL ROBERSON, and DAVID LACY,
individually and on behalf of all others
similarly situated**                                                    **PLAINTIFFS**


**V.**                          **CASE NO. 5:23-CV-5197**


**OUTCOMES, INC. and TONY POSEY**                          **DEFENDANTS**


**OPINION AND ORDER**

On March 31, 2025, this Court entered an Opinion and Order denying two motions

for summary judgment filed by Defendants, and denying in part and granting in part a

motion for summary judgment filed by Plaintiffs. *See* Doc. 82. The next day, Defendants

filed a Motion for Clarification or Alternatively Reconsideration (Doc. 83), which is

presently before the Court.

As the Court explained in its last Order:

Defendant Outcomes, Inc. ("Outcomes") is an Arkansas nonprofit
corporation that provides a variety of services to assist individuals with
disabilities, ranging from minimal assistance to full-time support. Defendant
Tony Posey is the founder and Executive Director of Outcomes. The
plaintiffs in this case are all current or former employees of Outcomes who
worked overnight shifts in the homes of clients, during which they spent
some of their time sleeping on-site. They have brought this class and
collective-action lawsuit under the federal Fair Labor Standards Act
("FLSA") and the Arkansas Minimum Wage Act ("AMWA"), claiming that
they were improperly denied compensation for the time they spent sleeping
on-site.

(Doc. 82, pp. 1–2).

1

Under FLSA regulations, the general rule is that "[a]n employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy."  29 C.F.R. § 785.21.  Much of the Court's analysis in its last Order focused on an exception to this rule that applies when "[a]n employee . . . resides on his employer's premises on a permanent basis or for extended periods of time."  *Id.* at § 785.23.  After extensive discussion, the Court concluded that "Outcomes can potentially deduct some sleep time from shifts of less than 24 hours if those shifts come within a period of five consecutive days or nights when the employee in question was required to stay continuously at the client's home."  (Doc. 82, p. 13).  However, the Court concluded the evidentiary record before it was "underdeveloped on the extent, if any, to which that was the case for these Plaintiffs," and accordingly reserved that issue for resolution at trial rather than on summary judgment. *See id.*

Now, Defendants' latest Motion seeks clarification "that this would apply to shifts that allowed the employee to leave the premises when completely relieved of duty such as when the Client is away at a day program, as discussed in" a case which received extensive attention in the Court's last Order: *Bouchard v. Regional Governing Board of Region V Mental Retardation Services*, 939 F.2d 1323 (8th Cir. 1991).  The Court certainly agrees with Defendants that "residing on the premises permanently or for an extended period of time does not require the employee to be on the property 24 hours per day every day."  (Doc. 83, p. 2).  Asserting otherwise would imply, for example, that a person does not reside at her home unless she remains there 24 hours per day every day, which would

be an obviously nonsensical assertion.  So to the extent Defendants' Motion seeks this limited point of clarification, the Motion is granted.

However, the Court cautions the parties that they should not interpret this ruling to mean that the Court necessarily endorses Defendants' assertion later in the Motion that the shifts "employed by Outcomes" are "almost identical" to those that were under consideration in *Bouchard*.  *See id.* at 3.  So to whatever extent Defendants' Motion seeks such a ruling, the Motion is denied.  For example: in *Bouchard*, the employees' "Off Duty Hours" were "from 8:00 a.m. to 3:30 p.m. each day," *see* 939 F.2d at 1328, while, by contrast, most of the employees in the instant matter appear to have off-duty hours from 8:00 a.m. to 8:00 p.m. each day, *see generally* Doc. 18-2.  This is potentially significant, because in *Bouchard* a critical factor for determining whether the employees' workplace was "in effect a second residence" was "the amount of time they spend" there.  *See* 939 F.2d at 1331.  Furthermore, *Bouchard* should not be treated as the full and final word on this question of residence; indeed, the majority opinion in that case acknowledged that it was giving little, if any, weight to a 1988 Department of Labor enforcement policy which postdated the *Bouchard* defendant's creation of the compensation schedule at issue in that case.  *See id.*  Under that 1988 enforcement policy, another critical factor for this question of residence is whether the employee is provided "private quarters" in which, among other things, "the employee is able to leave his or her belongings during on- and off-duty periods."  *See* 1988 WL 614199, at \*2–\*3.

The bottom line here is that determining whether an employee "resides on his employer's premises . . . for extended periods of time" is a very nuanced and fact-dependent inquiry that cannot be decided simply by observing that the employee slept

3

on-site for five consecutive nights and was free to leave during his off-duty hours.  For

example, in another case cited in this Court's last Order, the Eleventh Circuit recently held

that an employee did not reside at her workplace because, among other things, she did

not "spend any real leisure time at the house, and she kept few personal belongings

there," such that "every time [she] arrived for a shift, she had to bring an overnight bag

and change of clothes with her."  *See Blanco v. Samuel*, 91 F.4th 1061, 1072 (11th Cir.

2024).  "She maintained a separate address and spent as much time away from the

[client's] house as she spent at the house.  . . .  What's more, [she] did not even have her

own key to the [client's] house."  *Id.* at 1072–73.  The record in the instant matter simply

did not permit this sort of fine-grained factual analysis to be performed on summary

judgment; accordingly, the question of whether Outcomes' employees resided at their

workplace for extended periods of time must be decided at trial (if the claims are not

settled before then).

IT IS THEREFORE ORDERED that Defendants' Motion for Clarification or

Alternatively Reconsideration (Doc. 83) is **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED on this 2nd day of April, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE